| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| COUNTY OF GUILFORD | 25 CVS \_\_\_\_\_ |
| | 25CV008607-400 |

| | |
|---|---|
| GEORGE LEVETTE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **COMPLAINT** |
| | ) |
| CARDINAL HEALTH 110, LLC, | ) |
| | ) |
| Defendant. | ) |

COMES NOW Plaintiff GEORGE LEVETTE ("Mr. Levette"), by and through undersigned counsel, complaining of Defendant CARDINAL HEALTH 110, LLC ("Defendant"), alleges and says the following:

## PARTIES

1. Mr. Levette is a citizen and resident of Greensboro, North Carolina. At all times relevant to this action, he was mentally competent, more than 18 years old, not in military service, *sui juris*, and a citizen and resident of Guilford County, North Carolina.

2. Defendant is a limited liability company formed in the State of Delaware, with a principal place of business in Dublin, Ohio, and registered to do business and at all times relevant was transacting business in Guilford County, North Carolina.

## JURISDICTION AND VENUE

3. The Superior Court of the General Court of Justice has jurisdiction over this matter pursuant to N.C. Gen. Stat. § 7A-240 and § 7A-243.

4. Venue lies in Guilford County, North Carolina, pursuant to N.C. Gen. Stat. § 1-80.

## FACTS

5. Defendant hired Mr. Levette on or about August 8, 2022 to serve as a Warehouse Associate at Defendant's Greensboro, North Carolina warehouse located at 4 Cardinal Health Court, Greensboro, North Carolina 27407.

6. Mr. Levette's responsibilities as a Warehouse Associate included, among other things, loading and unloading totes, containing pharmaceuticals in the warehouse.

7. Defendant's employment policies prohibit discrimination on the basis of disability and every other classification protected by law.

1

8. On November 17, 2023, Mr. Levette reported a work-related injury involving his bilateral hands/wrists to his supervisor, Brian Cannizzo, via text message, to initiate a worker's compensation claim.

9. On November 19, 2023, Mr. Levette reported for work at Defendant's warehouse and was sent home early by his supervisor, Brian Cannizzo.

10. Mr. Levette attended his first doctor's visit at Concentra for his injury on November 20, 2023 as directed by Defendant.

11. At the initial visit on November 20, 2023, Mr. Levette's physician at Concentra, Dr. David Yelverton, diagnosed Mr. Levette with bilateral carpal tunnel syndrome, trigger ring finger of left hand, and trigger ring finger of right hand.

12. At the same visit, Dr. Yelverton referred Mr. Levette to a hand surgeon, to a physical therapist, and placed Mr. Levette on work restrictions, including but not limited to the following light duty restrictions:

   a. May lift up to 10 lbs occasionally

   b. May push/pull up to 10 lbs occasionally;

   c. Unable to use power/impact/vibratory tool with right upper extremity

   d. Unable to use power/impact/vibratory tool with left upper extremity

   e. May grip/squeeze/pinch with right upper extremity occasionally

   f. May grip/squeeze/pinch with left upper extremity occasionally

   g. Wear splint/brace on right upper extremity constantly

   h. Wear splint/brace on left upper extremity constantly

13. Defendant subsequently moved Mr. Levette from his typical responsibilities to a different loading job, which still involved bilateral lifting and use of his hands.

14. On November 23, 2023, Mr. Levette, experiencing significant, bilateral hand and wrist pain, reached out to Mr. Cannizzo, prior to his shift time, informing him that he was experiencing pain due to his workplace injuries and that he would need to take the day off.

15. Prior to requesting this time off, Mr. Levette logged onto ADP to check his PTO accruals. On November 23, 2023, Mr. Levette had 13.3 hours of accrued PTO.

16. Brian Cannizzo did not inform Mr. Levette that it was Defendant's position that he could not use his time off on November 23, 2023, and as such, Mr. Levette took the day off.

17. Despite his conversation with Mr. Cannizzo, and unbeknownst to Mr. Levette, Defendant marked Mr. Levette as a no call/no show for November 23, 2023.

18. On November 27, 2023, Mr. Levette returned to Concentra and saw Nurse Practitioner, Katherin Schoor. During said appointment, Ms. Schoor observed that as a result of his work-related injuries Mr. Levette "ha[d] significant difficulties with the physical requirements of his job."

19. On November 28, 2023, Mr. Levette presented to Concentra for his first physical therapy appointment, during which Physical Therapist, Brian Slade, determined that Mr. Levette initially needed to be seen for physical therapy treatment three times a week for two weeks.

20. On November 30, 2023, DeDe Thompson, Claims Examiner for Sedgwick, Defendant's worker's compensation carrier, emailed a worker's compensation denial to Mr. Levette.

21. On the same date, Defendant terminated Mr. Levette's employment.

22. Defendant terminated Mr. Levette due to Mr. Levette's ongoing worker's compensation claim.

23. Following his termination, Mr. Levette filed for unemployment benefits with the North Carolina Department of Commerce. The North Carolina Department of Commerce, following appeal, on February 14, 2024, awarded Mr. Levette unemployment, specifically finding in part as follows:

   a. The claimant was discharged due to being an alleged no call no show.

   b. The claimant used paid time off to be out of work on November 23, 2023.

   c. The claimant was subsequently informed that he did not have any paid time off available for his November 23, 2023 absence so it was deemed a no call no show.

   d. The claimant was not a no call no show on November 23, 2023. The claimant had 13.3 hours of leave available that he utilized for his November 23, 2023 absence.

24. Upon information and belief, Defendant fired Mr. Levette, despite Mr. Levette having accrued PTO, despite challenging or denying the PTO noted in ADP for Mr. Levette, and despite Mr. Levette having initiated a worker's compensation claim, the injuries for which Mr. Levette was experiencing significant pain with on November 23, 2023.

25. Defendant wrongfully terminated Mr. Levette contrary to and despite Defendant's employment policies prohibiting discrimination on the basis of disability and every other classification protected by law.

## FIRST CLAIM FOR RELIEF
### Wrongful Discharge

26. Plaintiff hereby incorporates by reference the foregoing paragraphs as if fully set forth herein.

27. Mr. Levette participated in conduct protected by law – namely reporting a worker's compensation claim and seeking treatment following the same.

28. Mr. Levette's participation in conduct protected by law was a substantial factor in Defendant's decision to terminate his employment.

29. As a direct and proximate result of Defendant's conduct, Mr. Levette has suffered and continues to suffer lost wages, loss of earning capacity, and other damages to be proven at trial.

30. Mr. Levette is entitled to pre- and post-judgment interest, and any other relief the court may deem just and proper.

31. The conduct, acts and omissions of Defendant constitute malicious, willful and wanton conduct or were in reckless disregard and indifference to Mr. Levette's rights.

## SECOND CLAIM FOR RELIEF
## NC REDA

32. Mr. Levette hereby incorporates by reference the foregoing paragraphs as if fully set forth herein.

33. On or about January 17, 2024, Mr. Levette filed a Retaliatory Employment Discrimination Complaint Form with the North Carolina Department of Labor.

34. The North Carolina Department of Labor's Retaliatory Employment Discrimination Bureau acknowledged receipt of Mr. Levette's Retaliatory Employment Discrimination Complaint on January 30, 2024.

35. On January 21, 2025, the North Carolina Department of Labor issued Mr. Levette a right-to-sue letter.

36. Defendant fired Mr. Levette in retaliation for his pursuit of benefits he was entitled to under the North Carolina Workers' Compensation Act.

37. Defendant's actions were a violation of North Carolina's Retaliatory Employment Discrimination Act, as manifested in N.C. Gen. Stat. § 95-241.

38. As a direct and proximate result of Defendant's conduct, Mr. Levette has suffered and continues to suffer lost wages, loss of earning capacity, and other damages to be proven at trial.

39. Mr. Levette is entitled to pre- and post-judgment interest, and any other relief the court may deem just and proper.

40. The conduct, acts and omissions of Defendant constitute malicious, willful and wanton conduct or were in reckless disregard and indifference to Mr. Levette's rights.

WHEREFORE, Plaintiff prays the Court that he have and recover of the Defendant the following:

1. Jury trial on all issues so triable;

2. Judgment against the Defendant for all wages, benefits and other compensation to which he is entitled, in a sum in excess of $25,000 plus interest as allowed by law to be determined at trial;

3. Judgment against the Defendant for punitive damages with interest;

4. That the judgment bear interest at the legal rate from the date of the breach until paid;

5. That the court award to Plaintiff his reasonable attorneys' fees, as provided by N.C. Gen. Stat. 95-25.22;

6. That the costs of this action be taxed to Defendant; and

7. For such other relief as may be just and proper.

This the 17th day of April, 2025.

OSBORN GAMBALE BECKLEY & BUDD PLLC

BY: /s/ Jordan Tenley

JOSEPH D. BUDD
N.C. Bar No. 44263
JORDAN TENLEY
N.C. Bar No. 51787
1100 Wake Forest Road, Suite 205
Raleigh, North Carolina 27604
joe@counselcarolina.com
jordan@counselcarolina.com
T: 919.373.6422
F: 919.578.3733